Argued and submitted May 26, affirmed December 14, 2011

In the Matter of the Compensation of
Judy A. Cole, Claimant.

THRIFTY PAYLESS, INC.,
dba Rite Aid Corporation;
and Pinnacle Risk Management Services,
*Petitioners,*

*v.*

Judy A. COLE,
*Respondent.*

Workers' Compensation Board
0901416; A146135

269 P3d 76

Dennis S. Reese argued the cause for petitioners. With him on the briefs was Garrett Hemann Robertson P.C.

Edward J. Harri argued the cause for respondent. With him on the brief were Peter O. Hansen and Law Offices of Peter O. Hansen.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Claimant was injured at work and brought a workers' compensation claim. ORS 656.202(1). Employer awarded claimant "permanent partial disability." ORS 656.214. The award included a payment for "impairment," ORS 656.214(1)(a), but not for "work disability," ORS 656.214(1)(e). Claimant sought administrative review, asserting that she was entitled to a payment for work disability because she had not returned to or been released to "regular work." ORS 656.214(2)(a), (b). Specifically, claimant asserted that she had not returned to or been released to "regular work" because she had not returned to or been released to work the overtime hours that she had worked on a regular basis before her injury. On review, the Workers' Compensation Board (Board) accepted claimant's assertion, reasoning that, for the purposes of ORS 656.214(2), claimant's "regular work" included the overtime hours that she had worked on a regular basis before her injury.

Employer petitions for judicial review, asserting that the board erred in concluding that claimant's "regular work" included her overtime hours.[1] Employer does not dispute that claimant worked overtime, nor does employer assign error to the Board's finding regarding the frequency of claimant's overtime. Instead, employer contends that, because there was no evidence that claimant was required to work the overtime hours, the overtime hours were not part of her "regular work." In other words, employer argues that, for the purposes of ORS 656.214(2), "regular work" includes only the work that a worker is required to do, and not additional work that a worker elects to do.

For the reasons explained below, we conclude that, for the purposes of ORS 656.214(2), a worker's "regular work" includes overtime that the worker works on a regular basis, regardless of whether the worker is required to work the overtime. Therefore, we affirm.

---

[1] Employer also argues that the board erred in awarding claimant attorney fees for the same reasons that it erred in ruling in claimant's favor. Our disposition of the case obviates the need to discuss that assignment of error separately.

We begin by explaining the relevant statutory context. A worker who suffers a permanent partial disability as a result of a work-related injury is entitled to a permanent partial disability award. ORS 656.214. At a minimum, a permanent partial disability award includes a payment for "impairment." ORS 656.214(2)(a). "Impairment" is "the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease * * *, expressed as a percentage of the whole person." ORS 656.214(1)(a). The amount of a payment for impairment is determined by multiplying the impairment percentage by "100 times the average weekly wage." ORS 656.214(2)(a). A worker is entitled to a payment for impairment regardless of whether the impairment actually affects the worker's ability to perform his or her "regular work."

In addition to a payment for impairment, a worker who suffers a permanent partial disability as a result of a work-related injury is entitled to a payment for "work disability" if "the worker has not been released to regular work * * * or has not returned to regular work at the job held at the time of injury[.]" ORS 656.214(2)(b). "Work disability" is "impairment modified by age, education and adaptability to perform a given job." ORS 656.214(1)(e). The amount of a work-disability payment is determined by "multiplying the impairment value, as modified by the factors of age, education and adaptability to perform a given job, times 150 times the worker's weekly wage for the job at injury." ORS 656.214(2)(b).

With that statutory context in mind, we turn to the facts of this case, as found by the board. Claimant worked in employer's warehouse as an "order puller." Claimant's job description did not state how many hours the position required. On average, claimant worked 43 hours per week, including overtime.[2]

In April 2008, claimant suffered a work-related back injury. In September 2008, claimant's doctor filled out a form stating that claimant was released to "regular work," but was

---

[2] The board found that "claimant worked 17 weeks of overtime within the six months preceding the injury, 10 within the preceding three months, and five within a month."

"not to do any overtime." The doctor indicated that the limitation on overtime was permanent. The record contains no evidence that claimant worked any overtime after the injury.

The issue in this case is whether claimant returned to, or was released to, "regular work at the job held at the time of injury." ORS 656.214(2)(a), (b). That is a question of statutory interpretation, and our task is to ascertain the legislature's intent by employing the methodology prescribed in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Accordingly, we look first to the text of the statute in context.

When interpreting a statute, we give words of common usage their "plain, natural, and ordinary meaning[s]."[3] *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). "Regular" is defined, in part, as follows:

> "**3 a :** steady or uniform in course, practice, or occurrence : not subject to unexplained or irrational variation : steadily pursued : ORDERLY, METHODICAL * * * **b** (1) : returning, recurring, or received at stated, fixed, or uniform intervals * * *."

*Webster's Third New Int'l Dictionary* 1913 (unabridged ed 2002). "Work" is defined, in part, as follows:

> "**1** * * * **b :** the labor, task, or duty that affords one his accustomed means of livelihood * * *."

*Id.* at 2634. And, "job" is defined, in part, as follows:

> "**5 a :** a regular remunerative employment : POSITION, SITUATION * * * **b :** a specific duty, role, or function : work customarily performed * * *."

*Id.* at 1217.

---

[3] The legislature defined "regular work" as "the job the worker held at injury." ORS 656.214(1)(d). One of the statutory provisions at issue states that, if a worker "has been released to regular work * * * or has returned to regular work at the job held at the time of injury," permanent partial disability is awarded only for "impairment." ORS 656.214(2)(a). The other, ORS 656.214(2)(b), contains similar language. If we read the definition of "regular work" in context, then, it becomes redundant: If a worker "has returned to [the job the worker held at injury] at the job held at the time of injury," permanent partial disability is awarded only for "impairment." As a result of that redundancy, we conclude that the ordinary meanings of the words "regular," "work," and "job" are all relevant to the meaning of the phrase "regular work" despite the statutory definition of the phrase.

Those definitions indicate that a person's "regular" work is the work that the person does on a "steady" or "recurring" basis, *id.* at 1913, and that a person's "work" consists of the "labor, task, or duty that affords [the person his or her] accustomed means of livelihood," *id.* at 2634. Similarly, a person's "job" is the person's "regular remunerative employment," that is, the "duty, role, or function" that the person "customarily perform[s]." *Id.* at 1217. All of those definitions indicate that a worker's "regular work" consists of the paid labor, task, duty, role, or function that the worker performs for an employer on a recurring or customary basis.

Notably, the definitions of "work" and "job" refer broadly to the labor, tasks, duty, role, and function of a worker; nothing indicates, as employer suggests, that their meanings are limited to what is expressly required by the employer, such as what is contained in the worker's job description. Although a worker's "duty" no doubt encompasses those express requirements, the definitions also contemplate that the work that a worker actually carries out— that is, his or her actual labor, task, role, and function—is included in the meaning of "regular work."

Nevertheless, employer focuses only on the term "duty" and makes two arguments. First, employer argues that a worker's "regular work" includes only the worker's duties and not his or her hours. Second, employer argues that, even if a worker's "regular work" includes the worker's hours, it does not include the worker's overtime hours. We address those arguments in turn.

More specifically, employer's first argument is that a worker's "regular work" depends "on the duties performed, not the hours worked." To the extent that employer is arguing that a worker's "duties" are only the actions that a worker performs, and are independent of how long the worker must perform them, that argument fails. Indeed, as employer acknowledged at oral argument, a full-time worker who, as a result of an injury, can only return to work part time has not returned to "regular work." That is true even if the worker is able to perform the same actions as before, just not for as long. Thus, if a warehouse worker had worked 40 hours per week pulling orders before an injury and were only able to

return to work 20 hours a week after the injury, the worker would not have returned to "regular work," even though the worker was still able to pull orders.

In arguing that a worker's "regular work" does not depend on a worker's hours, employer posits that, if the legislature had intended a worker's "regular work" to include a worker's hours, then the statutory factors for calculating the amount of a work-disability award would refer to a reduction in a claimant's working hours. *See* ORS 656.214(1)(e) (" 'Work disability' means impairment modified by [three factors:] age, education and adaptability to perform a given job."). The legislature listed those factors, but it did not define them.[4]

The statute, however, does not preclude consideration of a claimant's hours in the determination of the amount of a work-disability award. The adaptability factor—"adaptability to perform a given job," ORS 656.214(1)(e)—could account for the diminution in the number of hours that a claimant can work. If a claimant cannot work as many hours as she worked before the injury, she is less adaptable than she was before the injury. In fact, the administrative rule for calculating the adaptability factor *does* take into account the length of time for which a claimant can work. *See* OAR 436-035-0012(8)(l). Thus, employer's first argument—that a worker's "regular work" depends "on the duties performed, not the hours worked"—is unavailing.

Employer's second argument is that, even if the board could consider claimant's hours in determining whether she had returned to, or been released to return to, "regular work," it could only consider her nonovertime hours. Again, employer focuses on the term "duty" and argues that only the hours that a worker is required to work are relevant to a determination of whether a worker should receive a payment for work disability. That argument also fails. As set out above, the definitions for "regular," "work," and "job," all indicate that the legislature was concerned about the work that a

---

[4] The legislature delegated the definition of the factors to the director of the Department of Consumer and Business Services. ORS 656.726(4)(f)(C).

worker did on a steady or customary basis. That concern supports including overtime as part of a worker's "regular work" when it is performed on a steady or customary basis. Doing so helps ensure that a worker is compensated not only for the general effects of a disability, but also for the particular effects of the disability on the worker's ability to perform his or her job at injury.[5]

In sum, we conclude that "regular work" includes the work that a worker actually performs on a steady or customary basis, including overtime. Thus, the board did not err in interpreting claimant's "regular work" to include the overtime that she worked on a steady and customary basis.

Affirmed.

---

[5] In arguing that "regular work" for the purposes of ORS 656.214(2)(a) and (b) does not include overtime, employer relies on OAR 436-035-0012(8)(1). That provision defines "restrictions" for the purpose of calculating the adaptability factor of a work-disability award. By contrast, the "regular work" inquiry determines whether a claimant qualifies for work disability at all. Even assuming that the rule provides relevant context for the interpretation of ORS 656.214, nothing in OAR 436-035-0012 or in ORS 656.214 suggests that OAR 436-035-0012(8)(l) has any bearing on a claimant's eligibility for a work-disability award. In light of the lack of any direct connection between the rule's definition of "restrictions" and the statutory phrase "regular work," employer's argument is not persuasive.